UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEPHEN RINEHART and RACHEL RINEHART, on their own behalf; N.P., by his next friend and guardian, Stephen Rinehart, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:16-cv-2987 |
| DIRECTOR, CENTRAL ELIGIBILITY UNIT, INDIANA DEPARTMENT OF CHILD SERVICES, in her official capacity, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**Complaint for Declaratory Relief, Injunctive Relief, and Damages**

**Demand for Jury Trial**

**Introduction**

1.      N.P. is a minor child with severe disabilities. His biological parents have had their parental

rights terminated and surrendered him voluntarily for adoption upon birth.  He has been

placed by A Child's Dream of Nevada, an out-of-state licensed adoption agency, with

Stephen Rinehart and Rachel Rinehart, husband and wife, as N.P.'s prospective adoptive

parents. Because of N.P.'s severe disabilities, Stephen and Rachel Rinehart applied to the

Indiana Department of Child Services (DCS) for adoption assistance program and were

told N.P. would be eligible for such assistance under Title IV-E. Such assistance is essential

to offset the necessary current and future expenses of N.P. Stephen and Rachel Rinehart

desire to adopt N.P. and approval has been obtained by A Child's Dream of Nevada, Gifts

of Grace Adoption Support Center (a licensed Indiana child placement agency, responsible

for post-placement supervision and reporting on N.P. and the Rineharts) and the Indiana and Nevada Interstate Compact for the Placement of Children (ICPC) offices as required. The adoption is ready to be finalized in such court.

DCS made many subsequent requests for additional information verifying N.P.'s expenses and the Rinehart's income.  The Rineharts cooperated fully.  Upon receiving the requested information, DCS fell silent for many months, and only after multiple promptings from the Rineharts counsel finally responded.  Its initial response abruptly reversed its preliminary decision, offering $0.00 per day for N.P.'s care, Medicaid eligibility, and a one-time NRAE payment of $1,500. DCS cited N.P.'s eligibility for Medicaid and Social Security benefits as key to its decision, claiming these would offset any assistance offered by DCS's adoption assistance program. The Rineharts, through counsel, replied to the DCS pointing out that its position was legally incorrect. This prompted a response from DCS defending its position, adding that N.P. had no need for adoption assistance benefits as he had never received foster care payments (note that N.P. was never part of the foster care system), and maintaining its offer of $0.00 per day.

This lack of assistance will render it impossible for the Rineharts to adequately and appropriately care for N.P. and violates the State's duty under 42 U.S.C. § 671(a), to provide a plan which provides for foster care and adoption assistance in accordance with 42 U.S.C. § 673(a)(2), which includes children eligible for social security benefits, as well as its duty under 42 U.S.C. § 673(a)(3), to "take into consideration the circumstances of the adopting parents and the needs of the child being adopted" in computing the adoption subsidy. The actions and inactions of the Director of DCS' Central Eligibility Unit ("CEU-DCS"), who has the responsibility of establishing, *after negotiation*, adoption assistance payments, are therefore unlawful and

appropriate injunctive and declaratory relief should issue, together with appropriate actual and consequential damages.

**Jurisdiction, cause of action, venue**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 and § 2202.

5.      This case is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the laws of the United States.

**Parties**

6.      Stephen Rinehart is an adult resident of Carroll County, Indiana.

7.      Rachel Rinehart, Stephen Rinehart's spouse, is an adult resident of Carroll County, Indiana.

8.      N.P. is a minor child who is placed by A Child's Dream of Nevada with Stephen and Rachel Rinehart for adoption.

9.      The Director of the Central Eligibility Unit of the Indiana Department of Child Services is the duly appointed head of the unit within the agency that is responsible for the administration and determination of eligibility for adoption assistance payments under Title IV-E of the Social Security Act.

**Legal background**

10.     Title IV-E of the Social Security Act, 42 U.S.C. § 670 *et seq.*, provides for federal funding for the purposes of foster care and adoption assistance to states which have submitted, and have had approved, state plans to the federal government.

11.     Indiana has submitted such plans, agreeing to be bound by the requirements of Title IV-E, and has received the federal funding provided by Title IV-E, which funding is used for, among other things, foster care and adoption assistance payments.

12.     DCS is the single state agency responsible for administering the funds received under Title IV-E by the State of Indiana. Ind. Code § 31-25-2-8(a)(2).

13.     Upon information and belief, DCS does not follow its federally-approved plan as it applies to Title IV-E adoption assistance applications for children who are special needs but not in the foster system.

14.     42 U.S.C. § 673 provides for the entering into of adoption assistance agreements providing for payments to be made for special needs children with the payments continuing after the child's adoption.

15.     Specifically, 42 U.S.C. § 673(a) provides that:

> "(1)(A)      Each State having a plan approved under this part shall enter into adoption assistance agreements (as defined in section 675(3) of this title) with the adoptive parents of children with special needs.
>
> (B)          Under any adoption assistance agreement entered into by a State with parents who adopt a child with special needs, the State—
>
> (i)      shall make payments of nonrecurring adoption expenses incurred by or on behalf of such parents in connection with the adoption of such child, directly through the State agency or through another public or nonprofit private agency, in amounts determined under paragraph (C), and
>
> (ii)      in any case where the child meets the requirements of paragraph (B), may make adoption assistance payments to such parents, directly

through the State agency or through another public or nonprofit private agency, in

amounts so determined.

[…](C)        The amount of the payments to be made in any case under clauses

(i) and (ii) of paragraph (1)(B) shall be determined through agreement between the

adoptive parents and the State or local agency administering the program under this

section, which shall take into consideration the circumstances of the adopting

parents and the needs of the child being adopted, and may be readjusted

periodically, with the concurrence of the adopting parents (which may be specified

in the adoption assistance agreement), depending upon changes in such

circumstances. However, in no case may the amount of the adoption assistance

payment made under clause (ii) of paragraph (1)(B) exceed the foster care

maintenance payment which would have been paid during the period if the child

with respect to whom the adoption assistance payment is made had been in a foster

family home."

16.    Indiana has, through regulations, established that:

"Sec. 2        A child shall be considered to be a special needs child, under the

Indiana adoption assistance program, if the child meets each of the following

criteria:

(1)     The county office of family and children has determined that

the child cannot or should not be returned to the home of the child's parent

or parents and that the parent or parents have signed or will sign a consent

to adoption regarding the child *or that parental rights have been or will be

terminated by a court in accordance with IC 31-35*.

(2)      One (1) of the following conditions exists:

   (A)      The child is two (2) years of age or older.

   (B)      The child is a member of a sibling group of two (2)

or more children of which at least one (1) is two (2) years of age or older

and who will be placed with the sibling group in the same home.

   (C)      *The child has a medical condition or physical,*

*mental, or emotional disability as determined by a physician licensed to*

*practice in Indiana or another state or territory.*

(3)      Reasonable but unsuccessful efforts must be made to place

the child in an appropriate adoptive home without providing adoption

assistance. Reasonable efforts include, but are not limited to, the following:

   (A)      Photo listing the child with the Indiana adoption

resource exchange for a minimum of six (6) months.

   (B)      Inability to recruit appropriate, interested adoptive

parent or parents who are able to meet the child's needs without the use of

adoption assistance.

Reasonable efforts need not be made to place the child without adoption assistance

*if to do so would be against the best interests of the child because of such factors*

*as the existence of significant emotional ties with prospective adoptive parents*

while in the care of such parents as a foster child."

465 Ind. Admin. Code 2-7-2 (emphasis added).

6

17.     To assist with the interpretation of states' duties under Title IV-E of the Social Security
        Act, the Department of Health and Human Services, through its Children's Bureau, has
        created the Child Welfare Policy Manual that provides, in relevant part:

        (A)     "The circumstances of the adopting parents must be considered together with the
                needs of the child when negotiating the adoption assistance agreement.
                Consideration of the circumstances of the adopting parents has been interpreted by
                the Department to pertain to the adopting family's capacity to incorporate the child
                into their household in relation to their lifestyle, standard of living and future plans
                as well as their overall capacity to meet the immediate and future needs (including
                educational) of the child. This means considering the overall ability of the family
                to incorporate an individual child into their household."

                Child Welfare Policy Manual 8.2A.2, Question 1 (last visited Oct. 27, 2016).

        (B)     "The amount of the adoption assistance payment cannot exceed the amount the
                child would have received if s/he had been in a foster family home, but otherwise
                must be determined through agreement between the adoptive parents and the State
                or local title IV-E agency. *Unlike other public assistance programs in the Social
                Security Act, the title IV-E adoption assistance program is intended to encourage
                an action that will be a lifelong social benefit to certain children and not to meet
                short-term monetary needs during a crisis. Further, the adoptive parents' income
                is not relevant to the child's eligibility for the program.*

                Title IV-E adoption assistance is not based upon a standard schedule of itemized
                needs and countable income. Instead, the *amount of the adoption assistance
                payment is determined through the discussion and negotiation process between the*

*adoptive parents and a representative of the State agency* based upon the needs of the child and the circumstances of the family. The payment that is agreed upon should combine with the parents' resources to cover the ordinary and special needs of the child projected over an extended period of time and should cover anticipated needs, e.g., child care. Anticipation and discussion of these needs are part of the negotiation of the amount of the adoption assistance payment."

Child Welfare Policy Manual 8.2D.4, Question 1 (last visited Oct. 27, 2016) (emphasis added).

(C)   "If a State's foster care payment schedule includes higher level-of-care rates that are paid across-the-board for certain children, the State may pay up to that amount in adoption assistance if that specific child would have received the higher level-of-care rate in foster care."

Child Welfare Policy Manual 8.2D.4, Question 5 (last visited Oct. 27, 2016).

18.   The adoption assistance agreement must "[b]e signed and in effect at the time of or prior to the final decree of adoption." 45 C.F.R. § 1356.40(b)(1).

**Factual allegations**

19.   The Central Eligibility Unit is the unit within DCS that is charged with the responsibility of, among other things, determining, after negotiation, the amount of adoption assistance payment to be paid pursuant to Title IV-E of the Social Security Act for the benefit of special needs children who are adopted.

20.   N.P. was born on September 28, 2015 in Las Vegas, Nevada. He is currently one year old. His biological parents' parental rights have been terminated by the State of Nevada upon

their surrender of him for adoption to A Child's Dream of Nevada, Inc., a Nevada adoption agency.

21.     A Child's Dream of Nevada has signed a Temporary Custody Placement Agreement placing Noah in the care of the Rineharts pending his adoption.  He has been in the continuous care of the Rineharts since October 3, 2015 and they are his *de facto* custodians under I.C. 31-9-2-35.5.

22.     N.P. suffers from severe disabilities.  He was diagnosed with Trisomy 21 (commonly known as Down Syndrome) and a defect in the anterior ventral canal of his heart.  N.P. required heart surgery to correct this defect and lifelong care related both the after-effects of pediatric heart surgery and for Trisomy 21 issues, including a reduced immune system and special dietary needs.

23.     Stephen and Rachel Rinehart reside in Rossville, Indiana, where they raise their three biological children, ages ten (10), eight (8) and four (4).

24.     As of January 1, 2016, the DCS payment rates in Indiana are as follows:

|  | Age 0-4 | Age 5-13 | Age 14-18 |
|---|---|---|---|
| Foster Care | $20.47 | $22.22 | $25.64 |
| Foster Care with Services | $28.24 | $29.99 | $33.41 |
| Therapeutic Foster Care | $40.38 | $42.13 | $45.55 |
| Therapeutic Plus | $64.13 | $65.88 | $69.30 |
| Non-Ward Baby | $20.47 | n/a | n/a |

25.     A child age 0-4 in foster care necessitating the Therapeutic Plus level would be eligible for $64.13/day assistance, a recognition by DCS that such children have profound disabilities and extraordinary needs.

26.     N.P. has needs that are equivalent to a child of similar age at the Therapeutic Plus level, and this sum of money is absolutely necessary to care for him due to his profound disabilities and extraordinary needs.

27.    N.P.'s biological parents had made arrangements for his adoption before his birth and he

was duly placed for adoption on October 1, 2015, at which time the parental rights of the

biological parents were terminated under Nevada law. Stephen and Rachel Rinehart arrived

in Las Vegas on October 3, 2015 to obtain custody and return to Indiana with N.P. upon

completion of all necessary legal placement requirements. He was placed in their custody

and returned to Indiana with them shortly thereafter.

28.    N.P.'s adoption by Stephen and Rachel Rinehart has been duly approved by the Nevada

adoption agency, A Child's Dream of Nevada, and the Indiana adoption placement agency,

Gifts of Grace Adoption Support Center.  Further required approval of the Nevada and

Indiana ICPC offices has been obtained as well.

29.    Stephen and Rachel Rinehart have initiated an adoption proceeding in Marion County

Probate court to adopt N.P. That action is pending under Cause No. 49D08-1607-AD-

023755.

30.    Stephen Rinehart is self-employed full-time and his gross income is approximately $24,000

a year. Rachel Rinehart works part-time at her husband's business doing the bookkeeping

but is otherwise a full-time mother and homemaker.

31.    N.P. is a "child with special needs" under Indiana law and has been awarded Social

Security benefits by the Social Security Administration due to his special needs.

32.    Accordingly, Stephen Rinehart and Rachel Rinehart, once they adopt N.P., are entitled to

an adoption assistance payment for him.

33.    Stephen Rinehart and Rachel Rinehart asked the DCS to receive adoption assistance

payments for N.P of $69.30 per day. They estimated in good faith that this amount was

minimally necessary, when combined with their existing income and resources, to cover the ordinary and special needs of N.P. as well as the anticipated needs of N.P.

34.    They presented extensive information to the DCS that demonstrated the needs of N.P. and the current income and expenses for the family, including multiple tax returns and line-item budgets.  They also emphasized that many of N.P.'s care providers had agreed to hold off on collecting the sums owed them pending the resolution of the adoption subsidy arrangement.

35.    Despite recognizing the extraordinary needs of similarly situated children, the CEU-DCS offered a total per diem of $0.00 a day, plus Medicaid and a one-time non-recurring adoption expense payment of $1,500.  It stated that this offer was "based on the fact that the IV-E AA and SSI will offset each other as they come out to the same fund."

36.    Through counsel, the Rineharts rejected the proposed offer of CEU-DCS, citing again the information provided, N.P.'s special needs, and the equivalent rates provided for similarly situated children already in foster care.  They requested an adjusted amount of $63.83 per day, the 2015 rate for a child age 0-4 in a Therapeutic Plus Care setting.  Counsel also pointed out that the legal position of CEU-DCS was incorrect, as Social Security benefits may be reduced by the amount of adoption assistance received and not the other way around; that the monies for Title IV-E assistance and Social Security benefits do not in fact come from the same fund, and that since Social Security benefits will reduce by the amount of the adoption subsidy, that needs would continue to be unmet by Social Security and thus CEU-DCS's position was legally unworkable.

37.    CEU-DCS refused the second request and the legal arguments submitted by the Rineharts. It defended its position by stating that it did take into account N.P.'s needs and the family's

circumstances, that it did not reduce its offer based on N.P.'s Social Security benefit, that the parents were already meeting N.P.'s needs without benefit of adoption assistance, and that it had followed its process correctly. It stated that CEU-DCS and the Rineharts were now at an impasse.

38.    CEU-DCS then issued a letter and Title IV-E Adoption Assistance Agreement which offered $0.00 per day in adoption subsidy, Medicaid eligibility and up to $1,500.00 in NRAE payments to be made to the adoptive parents. In its letter, CEU-DCS again stated that N.P.'s Social Security benefits would cover his monthly needs, less $11.33, and that the Rineharts were already able to meet the financial needs of N.P.'s care without adoption assistance.

39.    CEU-DCS has stated that this is its "final offer."

40.    In spite of the ample information provided, CEU-DCS clearly has not taken into account the numerous expenses that N.P. will incur both currently and in the future for treatment of his heart defect as well as care for a Trisomy 21 child. CEU-DCS has also not taken into account that Indiana's First Steps program (the program providing therapy and care for N.P.) will not begin billing the Rineharts until the adoption has been finalized, although this has been clearly stated since the beginning.

41.    Upon information and belief, all or substantially all adoption assistance applicants who are similarly situated to the Rinehart's (i.e., are applying for Title IV-E adoption assistance subsidies for a special needs child not in foster care) experience the same types of treatment and outcomes.

42.    The adoption assistance agreement must be finalized before the adoption of N.P. can occur.

12

43.     Stephen Rinehart and Rachel Rinehart will not be able to provide for N.P., their three biological children, and themselves, nor meet their currently-incurred debts, without receiving adoption assistance.

44.     One of the purposes of adoption assistance payments under Title IV-E of the Social Security Act is to facilitate the permanent placement of children who otherwise would not be able to be placed or who would otherwise likely become wards of the State.

45.     The actions and inactions of CEU-DCS thwarts that purpose.

46.     Plaintiffs are being caused irreparable harm for which there is no adequate remedy at law.

47.     At all times Defendant has acted under color of state law.

**Legal claim**

48.     In determining the adoption assistance payment for N.P., CEU-DCS has failed to properly take into consideration the needs of the child and the circumstances of Stephen and Rachel Rinehart in violation of 42 U.S.C. § 673(a)(3).

49.     In the establishment and carrying out of activities under its policies and procedures, CEU-DCS has failed to properly operate a plan which provides adoption assistance in violation of 42 U.S.C. § 671, as they have refused adoption assistance to a child eligible for Social Security benefits in violation of 42 U.S.C. § 673(a)(2).

**Relief requested**

WHEREFORE, Plaintiffs request that this Court:

1.     Accept jurisdiction over this case and set it for hearing at the earliest opportunity.

2.     Declare that the actions and inactions of defendant have violated federal law for the reason noted above.

3.    Enter a permanent injunction enjoining Defendant to negotiate adoption assistance payments for N.P. that properly take into consideration the needs of the child and the circumstances of Stephen Rinehart and Rachel Rinehart.

4.    Enter a permanent injunction preventing Defendant from continuing to deny Title IV-E adoption assistance subsidies to applications who adopt special needs children not in foster care in the State of Indiana and/or who are eligible for Social Security benefits.

5.    Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6.    Award all other proper relief.

Respectfully submitted,

s/ Zachary S. Kester
Zachary S. Kester, Attorney No. 28630-49
Kester Law Firm
11 W. Main Street
Mooresville, IN 46158
zkester@kesterlawfirm.com
Tel: 812-272-0167
Fax: 317-203-0892
*Attorney for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through counsel, hereby demand a jury trial pursuant to Fed. R. Civ. P. 38(b) and Local Rule 38-1.

Respectfully submitted,

s/ Zachary S. Kester
Zachary S. Kester, Attorney No. 28630-49
Kester Law Firm
11 W. Main Street
Mooresville, IN 46158
zkester@kesterlawfirm.com
Tel: 812-272-0167
Fax: 317-203-0892
*Attorney for Plaintiffs*