UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHEN RINEHART and RACHEL RINEHART, on their own behalves, and N.P., by his next friend and guardian, Stephen Rinehart,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DIRECTOR, CENTRAL ELIGIBILITY UNIT, in his or her official capacity, TERRY STIGDON,[1] Director, INDIANA DEPARTMENT OF CHILD SERVICES, in her official capacity, TAMARA, WILSON, Staff Attorney, in her individual and official capacities, and DIRECTOR, ADMINISTRATIVE SERVICES DIVISION, in his or her official capacity,<br><br>　　　　Defendants. | Case No. 1:16-cv-2987-TWP-DML |

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE AMENDED COMPLAINT**

This matter is before the Court on the Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Filing No. 29) and the Motion to Strike Portions of Plaintiffs' Second Amended Complaint Pursuant to Rule 12(f) (Filing No. 32) filed by Defendants the Director of the Central Eligibility Unit, Terry Stigdon as Director of the Indiana Department of Child Services, Tamara Wilson ("Wilson") as Staff Attorney, and the Director of the Administrative Services Division (collectively, "Defendants"). In this lawsuit, the Plaintiffs seek relief against the Defendants, who are all state officials who have or had a role in Indiana's implementation of the federal Adoption Assistance Program which, generally, provides monetary benefits designed to assist adopting parents in meeting the financial needs of their adopted child.

---

[1] Ms. Terry Stigdon is the current Director of the Indiana Department of Child Services. She is substituted in place of the former Director, Mary Beth Bonaventura, as provided by Fed. R. Civ. P. 25(d).

Before the court are two motions—Defendants' Motion to Dismiss and their Motion to Strike. They seek to dismiss the Plaintiffs' Second Amended Complaint ([Filing No. 24](#)) on the grounds that: (1) the official capacity claims are deficient because (i) the Plaintiffs may not seek money damages against the state and (ii) the Plaintiffs do not have standing to seek injunctive or declaratory relief and, (2) the personal capacity claim against Defendant Tamara Wilson is deficient because she is entitled to qualified immunity.

The Defendants' Motion to Strike asks the Court to strike certain allegations from the Second Amended Complaint on the ground they make unsupportable and scandalous claims.

As addressed below, the Motion to Dismiss is **granted** and the Motion to Strike is **denied**.

## I. DISCUSSION

**A.** **Motion to Strike**

Motions to strike allegations from a pleading should be denied unless the allegations have no possible connection to the controversy and may cause significant prejudice to a party. *See* Charles Wright & Arthur Miller, *Federal Practice and Procedure,* 1380 (2004). The paragraphs of the Second Amended Complaint at issue (56, 81, 85, 86, and 87) allege that government officials, or Indiana's Department of Child Services ("DCS") in general, routinely interfere or attempt to interfere with adoptive parents' rights to obtain fair assistance payments under the federal Adoption Assistance Act. The Court cannot find that these allegations cause significant prejudice to a party. The Defendants are accused of wrongful conduct in their roles as government officials and a citizen's statements about what he or she perceives as government malfeasance should not generally be characterized as scandalous. The Court is confident that any reasonable reader of the Second Amended Complaint would recognize that the Plaintiffs' allegations are just

that—the request for redress against government officials. The Court therefore **denies** the Defendants' Motion to Strike (Filing No. 32).

**B.     Motion to Dismiss**

The Court now turns to the Defendants' Motion to Dismiss. The Court first outlines the allegations of the Plaintiffs' Second Amended Complaint, sets forth the guiding standard of review, and then evaluates the Second Amended Complaint's allegations in light of the causes of action to determine whether, as against any of the Defendants, the Second Amended Complaint states a claim upon which relief may be granted.

**1.     The Second Amended Complaint**

The Plaintiffs are N.P., a child, and the parents who adopted him, Stephen Rinehart and Rachel Rinehart ("the Rineharts"). N.P. is a special needs child. The second amended complaint pertains to the Rineharts' application for Title VI-E adoption assistance payments and other benefits from DCS, their navigation of the administrative process to obtain benefits, and the negotiation of an agreed payment amount for N.P.

Some background about the Title IV-E program is helpful to understanding the context of the Rineharts' claims. The Title IV-E program is Congress's Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. 670 *et seq.*, and is codified at Title IV-E of the Social Security Act. This background is derived from governing statutes and regulations, and the Court takes judicial notice of the general administrative process in the Title IV-E program. The State of Indiana receives federal funding in implementing a plan that has been approved by the federal government to provide child adoption assistance benefits. The federal government pays a percentage of the State's expenses. The State administers its plan through DCS.

Adoptive parents of special needs children who meet statutory eligibility requirements under 42 U.S.C. § 673 can apply for adoption assistance payments to be made through DCS. Adoption assistance payments can include a one-time payment for non-recurring costs and periodic "per diem" payments until the child is 18 years old that are based on the child's age and the severity of his or her needs. Prospective adoptive parents who wish to seek adoption assistance benefits are required to enter into an adoption assistance agreement with DCS before the adoption can be finalized. 45 C.F.R. § 1356.40(b)(1). If the parents and DCS do not agree, then DCS issues a Final Offer Letter to the parents, stating the amount of benefits DCS is willing to provide.[2] Parents who disagree with the offer can seek administrative review; they can even enter into an adoption assistance agreement with DCS while the amount of benefits is under administrative review. Within 60 days after DCS's Hearings and Appeals section receives the request for review, an administrative review decision is made and communicated to the adoptive parents. If the parents are dissatisfied with the decision, they can request an administrative hearing. When a timely request for hearing is made, a hearing is held before an administrative law judge. If the administrative law judge decides that the parents have met a burden of proof that the amount of assistance benefits should be changed, then the administrative law judge remands the matter to DSC for further proceedings. DCS and the parents then negotiate again to see if an agreement can be reached.

If an agreement is not reached, then DCS issues a post-remand Offer Letter to the parents. If the parents disagree with that offer, they again may seek administrative review, and the decision entered on this second level of administrative review constitutes final agency action that is subject to judicial review under the Indiana Administrative Order and Procedures Act.

---

[2] The administrative process is described in DCS's Child Welfare Manual, Negotiations for Adoption Assistance, available at https://www.in.gov/dcs/2531.htm.

4

## 2. The Plaintiffs' Lawsuit

The Plaintiffs' Second Amended Complaint alleges the following. In October 2015, the Rineharts arranged with private adoption agencies to adopt N.P., who has Down Syndrome and other disabilities. They applied to the Adoption Assistance Program and in February 2016 were deemed eligible for adoption assistance payments from DCS, as well as Medicaid eligibility for N.P., and a one-time, non-recurring adoption expense payment of $1,500.00. N.P. also had been awarded Social Security disability benefits. After the Rineharts were deemed eligible for assistance payments, they entered the negotiation phase of the administrative process. DCS assigned one of its staff attorneys, Defendant Wilson, to negotiate the amount of N.P.'s Title IV-E adoption assistance per diem.

The Rineharts contend that the negotiations were not conducted in good faith by Wilson. First, they allege that despite their full cooperation with DCS and provision of information in response to DCS's many requests, DCS "fell silent for many months." Second, they allege that in response to their request for $69.30 as an appropriate per diem based on N.P.'s needs and the Rineharts' income and financial resources, DCS offered $0.00 in adoption assistance payments and was willing to pay only a one-time expense payment of $1,500.00 and provide Medicaid eligibility. DCS stated that its offer was based on the fact N.P. was receiving Social Security disability benefits and "the IV-E AA [adoption assistance payments] and SSI [Social Security disability] will offset each other as they come out to the same fund." Filing No. 24 at 13.

In response, the Rineharts' lawyer rejected DCS's $0.00 adoption assistance payments offer, lowered the Rineharts' demand to $63.84 per day (from $69.30), and expressed his view that the payments could not legally be offset by SSI payments. DCS then issued a Final Offer Letter that included the three items it previously offered: $0.00 in assistance payments, a one-time benefit

of $1,500.00, and Medicaid eligibility. The letter explained that in DCS's view, N.P.'s disability benefits would cover his monthly needs except for $11.33, which the Rineharts were capable of meeting without a per diem adoption assistance subsidy.

In response, the Rineharts filed this lawsuit and, at the same time, sought administrative review of the Final Offer Letter. Approximately two weeks later, the administrative reviewer vacated the offer in the Final Offer Letter and remanded the matter for further negotiation, including a face-to-face meeting. On March 7, 2017, a face-to-face negotiation was held, and in April 2017, the Rineharts and DCS entered into a negotiated agreement. They agreed that $30.00 per day in adoption assistance payments would be made, in addition to the benefits of Medicaid eligibility and a one-time payment of $1,500.00. Thereafter, on June 2, 2017, the final Decree of Adoption was entered, completing the Rineharts' adoption of N.P.

The Rineharts' are in the process of seeking to adopt another child with special needs and they anticipate that they will not be made fair offers in the adoption assistance application process for that child. They base their fear on the negotiations they had with DCS employee Wilson in connection with N.P.'s adoption. They allege that it was improper for Wilson to have made the offer of $0.00 per diem (and Medicaid benefits and the $1,500.00 one-time payment) based on Social Security disability benefits serving as an "offset" in deciding per diem adoption assistance payments. They allege that Wilson must have held some personal vendetta against them because of the alleged unfairness of the $0.00 per diem offer and because Wilson suggested to the Rineharts' attorney and to the Director of the Adoption Subsidy Resource Center at the North American Council on Adoptable Children that the Rineharts had wrongfully claimed N.P. as a dependent and eligible for an adoption tax credit on their 2015 tax return when their adoption had not been finalized during 2015.

For relief, the Rineharts seek: (1) an injunction requiring DCS to negotiate N.P.'s adoption assistance payments; (2) an injunction preventing DCS "from continuing to deny Adoption Assistance Act amounts to applicants who adopt special needs children not in foster care in the State of Indiana and/or who are eligible for Social Security disability benefits"; (3) a declaration that the Defendants have violated federal law and the Constitution; (4) a declaration that Defendant Wilson, "in service of her public duty, singled out" the Rineharts for unfavorable treatment and acted for personal reasons "without rational basis or justification and with discriminatory intent"; and (5) $8,640.00 in damages, representing the "delay in finalization and effective date" of the adoption assistance agreement they entered with DCS for N.P.

## II. **STANDARD OF REVIEW**

The Defendants' Motion to Dismiss raises subject matter jurisdiction issues (the Plaintiffs' alleged lack of standing) resolved under the standards guiding Rule 12(b)(1) motions and other issues resolved under the standards guiding Rule 12(b)(6) motions.

Though a court may look outside the pleadings in deciding a Rule 12(b)(1) jurisdiction motion, the parties have not presented here any extra-pleading evidence for the Court to evaluate. Thus, in addressing the standing arguments, the Court applies essentially the same standard applicable to Rule 12(b)(6) motions generally. *See Sherman v. Marion County Child Support Div.,* 224 F. Supp. 2d 1220, 1224 (S.D. Ind. 2002).

To decide a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts and reasonable inferences to be drawn from them and determines whether the complaint states "'a claim to relief that is plausible on its face.'" *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Determining plausibility is "'a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 679)).

A.  **The Defendants' Motion to Dismiss**

Defendants contend the Second Amended Complaint must be dismissed in its entirety. They argue that the official capacity claims are deficient as a matter of law because both Section 1983 and Eleventh Amendment sovereign immunity prevent the Plaintiffs from obtaining damages and because the Plaintiffs lack standing to obtain injunctive relief. They argue that the individual capacity claim against Wilson is deficient as a matter of substantive law and because she is entitled to qualified immunity.

As explained below, the Court agrees that the Second Amended Complaint fails to state claims against the state officials in their official capacity and agrees that Wilson is entitled to qualified immunity.

1. **The damages claims against state officials in their official capacity do not state a claim upon which relief may be granted.**

There are numerous reasons why the Plaintiffs' damages claims against the Defendant state officials in their official capacities must be dismissed for failure to state a claim on which relief may be granted.

First, to the extent the Plaintiffs are seeking damages (or any other relief) under the federal Adoption Assistance Act, their claim for relief must be pursued—if at all—via a claim under 42 U.S.C. § 1983. The Rineharts do not really contend that the Adoption Assistance Act itself creates a private right of action, though they use that terminology (and so do the Defendants). But the Plaintiffs' authority for obtaining relief because of alleged violations of the Adoption Assistance Act depends on the seeking of relief via Section 1983. *See Hensley v. Koller,* 722 F.3d 177, 181-83 (4th Cir. 2013) (deciding that the right the plaintiffs alleged to have been violated under the Adoption Assistance Act was the kind of right enforceable through section 1983); *ASW v. Oregon,* 424 F.3d 970, 974-75 (9th Cir. 2005) (same—deciding whether rights that the plaintiff alleged were violated are "enforceable rights under 42 U.S.C. § 1983").[3]

Second, because the Plaintiffs' claims—for violations of certain alleged rights under the Adoption Assistance Act and for violations of federal constitutional rights to due process and equal protection under the Fourteenth Amendment[4]—must be pursued via Section 1983, the Defendants

---

[3] The Plaintiffs' argument that these courts decided that the Adoption Assistance Act "includes a private right of action" is wrong. Whether a statute contains its own right of action (either express or implied) is a different question from whether a plaintiff is seeking to enforce a kind of federal statutory "right," whose violation, consistent with the Supreme Court's decisions in *Blessing v. Freestone,* 520 U.S. 329 (1997), and *Gonzaga University v. Doe,* 536 U.S. 273 (2002), is actionable under 42 U.S.C. § 1983. This distinction is explained in *Gonzaga*, 536 U.S. at 284 (the private right of action context asks both whether a particular statute manifests an intent to create a private right but also a remedy).

[4] The Plaintiffs' claim that their Fifth Amendment due process rights were violated (*see* Filing No. 36 at 20) must be dismissed under Rule 12(b)(6) because the Fifth Amendment due process clause applies to actions of federal officials, not state officials. *Dusenbery v. United States,* 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'")

must be "persons" who are suable under that statute. Section 1983 provides a "means for vindicating federal rights conferred elsewhere," *Padula v. Leimbach,* 656 F.3d 595, 600 (7th Cir. 2011) (internal quotations omitted), and a plaintiff must show that he or she was "deprived of a right secured by the Constitution or federal law, by a *person* acting under color of law." *Id.* (emphasis added). It has long been the law that a state government official who is sued for damages in his or her official capacity is not a "person" under Section 1983. *See, e.g., Hafer v. Melo,* 502 U.S. 21, 26 (1991) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989)).

Third, damages claims against defendant state officials sued in their official capacities are barred by the state's sovereign immunity under the Eleventh Amendment. *E.g., Mueller v. Thompson,* 133 F.3d 1063, 1064 (7th Cir. 1998) ("Federal courts will not entertain suits against a state that arise under a federal statute to which the Eleventh Amendment is applicable unless the state has made its intention to waive its rights under the amendment clear.") "[I]mplicit waivers won't do," *id.,* and the Plaintiffs have not (and cannot) even plausibly allege an implicit waiver.

For each of these reasons, the Court finds that the Plaintiffs' Second Amended Complaint fails to state a damages claim against any of the Defendants in their official capacities. The only Defendant sued in her individual capacity (as well as in her official capacity) is Wilson. The Court will address the damages claim against her in Sub-section 4 below.

    **2.**     <u>**The Plaintiffs lack standing to seek injunctive relief.**</u>

Injunctive relief can be available against a state official in his or her official capacity via Section 1983. But here, the Plaintiffs lack standing to obtain the injunctive relief they seek. Standing is an aspect of the "case or controversy" requirement under Article III of the United States Constitution and it asks, in general terms, whether a plaintiff has a "vested interest in the

case." *Cabral v. City of Evansville,* 759 F.3d 639, 641 (7th Cir. 2014). A plaintiff does not have standing unless he or she establishes:

(1) that he or she suffered an "injury in fact";

(2) a causal connection between the injury in fact and the alleged improper conduct by the defendant; and

(3) that the injury would likely be redressed by a favorable result in the case.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

The "injury in fact" element requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Id.* at 560 (internal quotation omitted).

The Rineharts and N.P. do not meet these standards. As to N.P. (and the Rineharts' request for injunctive relief for N.P.), there is no injury at all and none to be corrected by any result in this case. A plaintiff must have standing throughout the litigation, *Kenseth v. Dean Health Plan, Inc.,* 722 F.3d 869, 890 (7th Cir. 2013), and it is beyond dispute here that the Rineharts already reached an agreement with DCS for adoption assistance payments for N.P.

With respect to the Rineharts' claims based on their intent to later adopt another special needs child, the alleged injury is not sufficiently concrete or particularized, nor imminent. The Rineharts' past experience with what they believe was wrongful conduct by a DCS official in the initial offer of adoption assistance payments as to a particular child and their future intent to seek adoption assistance payments for a different child they may wish to adopt is not enough to show a "significant likelihood and immediacy of sustaining some direct injury." *E.g., Kenseth,* 722 N.E.2d at 890-91 (citing *Sierakowski v. Ryan,* 223 F.3d 440, 443 (7th Cir. 2000)).[5]

---

[5] The Rineharts also do not have standing to seek injunctive relief because other people allegedly might be harmed in their negotiations of adoption assistance payments with the State. There is no showing that they possibly could exercise standing on behalf of such third parties. *See, e.g., Massey v. Wheeler,* 221 F.3d 1030, 1034-35 (7th Cir. 2000)

The Court therefore finds that the Rineharts and N.P. lack standing for the injunctive relief they seek under Section 1983 for alleged violations of their rights under the Adoption Assistance Act and the federal constitution.

### 3. **The Rineharts' requests for declaratory relief also fail.**

The Rineharts' requests for declaratory relief fail because they have no viable claims for damages or injunctive relief against the state officials whose actions they seek to constrain through declaratory relief. *See DeBartolo v. Healthsouth Corp.,* 569 F.3d 736, 741 (7th Cir. 2009) (the Declaratory Judgment Act is not an independent grant of subject matter jurisdiction). *See also Bell v. Taylor,* 827 F.3d 699, 711 (7th Cir. 2016) (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007)) (court should decline to enter declaratory judgment where there is "no actual controversy of 'sufficient immediacy and reality to warrant'" its issuance).

### 4. **Defendant Wilson is entitled to qualified immunity.**

The Court now turns to Plaintiffs' claims against Wilson in her individual capacity. She is subject to suit for damages under Section 1983. She contends, however, that the claims against her are not viable as a matter of law and, even if they were, the claims must be dismissed because the right she allegedly violated was not clearly established and she is therefore entitled to qualified immunity. The Court agrees that Wilson is entitled to qualified immunity.

A state official is entitled to immunity against a damages claim unless the plaintiff has pled facts to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). In analyzing whether an official is entitled to immunity, a court may answer either question first. In many cases, it is preferable that the court not expend its "'scarce judicial

---

(third-party claims are generally prohibited; there at least must be a showing of a close relationship with the other party and some obstacle to the other party's ability to protect his own interest).

resources' to resolve difficult and novel questions of constitutional or statutory interpretation" but rather address only whether the alleged right was clearly established. *Id*. To show that a right has been clearly established, there must be some existing precedent from the United States Supreme Court or from Seventh Circuit decisions that has "placed the statutory or constitutional question beyond debate." *Estate of Clark v. Walker,* 865 F.3d 544, 551 (7th Cir. 2017).

Here, the Plaintiffs' claims are all grounded in the notion that it is illegal, as a matter of the Adoption Assistance Act or Fourteenth Amendment Due Process or Fourteenth Amendment Equal Protection, for a DCS employee who is negotiating an adoption assistance offer letter (either at the start of negotiations or perhaps later in the process) to take into account that the prospective adoptee is receiving Social Security disability payments and to offset those payments in a manner which results in either a $0.00 or near-zero per diem offer.

The Plaintiffs' Second Amended Complaint, and their opposition to the Defendants' Motion to Dismiss, repeatedly state that Wilson's $0.00 offer based on offsetting Social Security disability payments and her determination that the remaining need was in a *de minimus* amount the Rineharts could meet was illegal or an "illegal application of the law" or a violation of a duty to act in good faith or similar characterizations. But the Plaintiffs do not cite to *any* precedent whatsoever to support the conclusion that it is beyond debate that Wilson's actions in offering $0.00 as a per diem after taking into account Social Security disability benefits and Medicaid benefits violated any particular right under the Adoption Assistance Act or the Due Process or Equal Protection clauses under the Fourteenth Amendment.

Because Wilson is entitled to qualified immunity, the claims against her must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike Portions of Plaintiffs' Second Amended Complaint (Filing No. 32) is **DENIED** and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Filing No. 29) is **GRANTED**.

**SO ORDERED.**

Date: 3/16/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Zachary S. Kester
KESTER LAW FIRM LLC
zkester@kesterlawfirm.com

Benjamin J Legge
OFFICE OF THE INDIANA ATTORNEY GENERAL
benjamin.legge@atg.in.gov

Sara Teresa Martin
OFFICE OF THE INDIANA ATTORNEY GENERAL
sara.martin@atg.in.gov